UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | |
|---|---|
| GLAD TIDINGS ASSEMBLY OF GOD CHURCH OF LAKE CHARLES | CASE NO. 2:21-CV-01009 |
| VERSUS | JUDGE JAMES D. CAIN, JR. |
| INDIAN HARBOR INSURANCE CO ET AL | MAGISTRATE JUDGE KAY |

## MEMORANDUM ORDER

Before the court is a Motion to Compel Arbitration and Stay Case [doc. 18] brought by the several domestic insurers having policies over the plaintiff and joined as defendants to this suit ("domestic insurers"). Plaintiff Glad Tidings Assembly of God Church of Lake Charles ("Glad Tidings") opposes the motion. Doc. 20.

### I.
### BACKGROUND

This suit arises from a property insurance claim made by Glad Tidings, a church in Calcasieu Parish, Louisiana, based on damage it sustained in Hurricane Laura in August 2021. At the time of the loss the church's properties were insured under a surplus lines commercial property insurance policy, which allocated premiums and proportionate liabilities among the eight domestic insurers named as defendants in this suit as well as Certain Underwriters at Lloyd's, London ("Underwriters") and HDI Global Specialty SE. Doc. 18, att. 3. The policy contains an arbitration clause, requiring that all disputes "in relation to this insurance, including its formation and validity . . . be referred to an

1

Arbitration Tribunal in the manner hereinafter set out," with arbitration taking place in New York. *Id.* at 42.

A dispute arose between Glad Tidings and the insurers as to the total amount of loss. Glad Tidings filed suit against only Underwriters in this court, raising claims for breach of insurance contract and bad faith, after which Underwriters sent it a letter invoking the arbitration agreement and a summary of case law applying arbitration clauses in policies subscribed to by foreign insurers. Doc. 18, atts. 4–6; *see Glad Tidings Assembly of God Church of Lake Charles v. Underwriters at Lloyds London*, No. 2:21-cv-0720 (W.D. La. Apr. 15, 2021). Glad Tidings voluntarily dismissed its suit against Underwriters and, on the same day, filed this suit for breach of insurance contract and bad faith against all of the domestic insurers named in the policy. Doc. 1. The insurers then filed a petition to compel arbitration and stay litigation against Glad Tidings. *See Certain Underwriters at Lloyds London v. Glad Tidings Assembly of God Church of Lake Charles*, No. 2:21-cv-1504 (W.D. La.). They also filed a motion to consolidate and a motion to compel arbitration and stay litigation in the instant suit, arguing that the arbitration agreement is enforceable under the Convention on the Recognition and Enforcement of Foreign Arbitral Awards due to the involvement of foreign insurers in the policy. Docs. 17, 18. Glad Tidings filed no opposition to the Motion Consolidate and the court has granted it by separate order. It opposes the Motion to Compel, however, arguing that the Convention does not apply and that the arbitration agreement is unenforceable because it is unconscionable and a contract of adhesion. Doc. 20.

# II.
# LAW & APPLICATION

Louisiana law prohibits arbitration agreements in insurance policies covering property within the state.[1] La. Rev. Stat. § 22:868(A)(2). Under the McCarran-Ferguson Act, state laws regulating insurance are shielded from the preemptive effect of federal law. 15 U.S.C. §§ 1011, 1012. Accordingly, McCarran-Ferguson allows state laws like Louisiana Revised Statute § 22:868(A)(2) to "reverse-preempt" the Federal Arbitration Act's provisions on the enforceability of insurance agreements. *See, e.g.*, *Am. Bankers Ins. Co. of Fla. v. Inman*, 436 F.3d 490 (5th Cir. 2006). However, this "reverse preemption" applies only to "Acts of Congress" and not to treaties. *Safety Nat'l Cas. Corp. v. Certain Underwriters at Lloyd's, London*, 587 F.3d 714, 723 (5th Cir. 2009). The Convention on the Recognition and Enforcement of Foreign Arbitral Awards ("Convention") is one such treaty, and requires signatory nations to "'recognize an agreement in writing under which the parties undertake to submit to arbitration' their dispute 'concerning a subject matter capable of settlement by arbitration.'" *Id.* at 719 (quoting Convention on the Recognition and Enforcement of Foreign Arbitral Awards art. II(1), June 10, 1958, 21 U.S.T. 2517, 330 U.N.T.S. 3)). Accordingly, state insurance law has no impact on arbitration agreements arising under the Convention. *Id.* at 723–24; *see also McDonnel Group, LLC v. Great Lakes Ins. Branch SE, UK Branch*, 923 F.3d 427 (5th Cir. 2019).

---

[1] The statute applies to insurance contracts "delivered or issued for delivery in [Louisiana]." La. Rev. Stat. § 22:868(A). The domestic insurers argue that, even if the Convention does not apply, the arbitration agreement is not invalidated by state law because Glad Tidings has not shown that the policy was delivered in the state and because, under § 22:868(D), the arbitration agreement is a venue selection clause within a surplus lines policy not governed by the Department of Insurance. The court will only consider these arguments in the event it finds that the agreement does not fall under the Convention.

The domestic insurers assert, and Glad Tidings does not dispute, that HDI is a citizen of Germany and the domestic insurers are citizens of the United States, both of which are signatories to the Convention.[2] *See* doc. 18, att. 1, p. 15. Under the above precedents, and despite Glad Tidings' reverse-preemption arguments, there is no basis for invalidating the arbitration agreement based on state law. Instead, the court conducts "a very limited inquiry" to determine whether arbitration should be compelled based on an agreement under the Convention. *1010 Common, LLC v. Certan Underwriters at Lloyd's, London*, 2020 WL 7342752, at *6 (E.D. La. Dec. 6, 2020) (quoting *Sedco, Inc. v. Petroleos Mexicanos Mexican Nat. Oil Co.*, 767 F.2d 1140, 1146 (5th Cir. 1985)). To this end it asks (1) whether there is a written agreement to arbitrate, (2) whether the agreement provides for arbitration in the territory of a Convention signatory, (3) whether the agreement arises out of a commercial legal relationship, and (4) whether a party to the agreement is not an American citizen. *Sedco*, 767 F.2d at 1144–45. If all of these conditions are met, "the Convention requires the district court to order arbitration." *Id.* at 1145.

Here the first, second, and fourth conditions are plainly satisfied by the insurance policy, which contains an insurance agreement, calls for arbitration within the United States, and to which non-U.S. citizen HDI is a party. As for the third, an insurance policy satisfies this condition. *E.g.*, *Port Cargo Svc., LLC v. Certain Underwriters at Lloyd's, London*, 2018 WL 4042874, at *6 (E.D. La. Aug. 24, 2018); *Georgetown Home Owners*

---

[2] Glad Tidings argues that Underwriters, as a collection of subscribing syndicates, has failed to show that it is a foreign entity for the purposes of this motion or indeed what its actual citizenship is. Doc. 20, pp. 10–11.

*Ass'n, Inc. v. Certain Underwriters at Lloyd's, London*, 2021 WL 359735, at *3 (M.D. La. Feb. 2, 2021). Accordingly, arbitration is required under Fifth Circuit precedent.[3]

Glad Tidings maintains, however, that the court should deny the domestic insurers' motion because it would frustrate the purpose of the case management order[4] and because the arbitration agreement is unconscionable and is a contract of adhesion. While the court recognizes the value of efficient settlement of hurricane-related claims, its case management order does not provide a basis for invalidating contracts. As for Glad Tidings' other arguments, these are substantially similar to those recently raised in the Middle District in *Georgetown HOA*, supra.

As the court pointed out there, challenges to the enforceability of an arbitration agreement are properly considered by the district court under state law. 2021 WL 359735 at *12. The Louisiana Supreme Court has explained that "a contract of adhesion is a standard contract, usually in printed form, prepared by a party of superior bargaining power for adherence or rejection of the weaker party," which may "raise a question as to whether or not the weaker party actually consented to the terms." *Aguillard v. Auction Mgmt. Corp.*, 908 So.2d 1, 8–9 (La. 2005). The party challenging the contract has the burden of proving his lack of consent. *Id.* at 10. The court focuses on the following factors: "(1) the physical characteristics of the arbitration clause, including font size; (2) the distinguished features

---

[3] In reliance on *Port Cargo*, supra, Glad Tidings argues that the domestic insurers are only allowed to enforce the arbitration agreement via equitable estoppel. However, the arbitration clause makes clear that all subscribing insurers are parties to that agreement. *See* doc. 18, att. 3, p. 42. Accordingly, the domestic insurers are likewise parties to the arbitration agreement falling under the Convention and the court finds that they are equally empowered to enforce the agreement as the foreign insurers.

[4] As a first-party insurance claim arising from damage incurred in Hurricane Laura, this case is governed by the court's Case Management Order ("CMO"). *See* doc. 3.

of the arbitration clause; (3) the mutuality of the arbitration clause, in terms of the relative burdens and advantages conferred by the clause upon each party; and (4) the relative bargaining strength of the parties." *Georgetown HOA*, 2021 WL 359735 at *12 (citing *Aguillard*, 908 So.2d at 16–17).

Glad Tidings argues that the arbitration agreement is unconscionable and adhesive because (1) it is in small, undistinguishable type within a large document; (2) it had no opportunity to negotiate the boilerplate terms; (3) arbitration is unduly burdensome on Glad Tidings as it attempts to settle its insurance claim dispute; and (4) the arbitrator selection process is unfair because it requires "senior officials" in claims handling or underwriting, whom Glad Tidings contends will be favorably disposed towards insurers. The agreement, however, is in a standard text size within a 42-page document and clearly identified in capital letters as an "Arbitration Clause." Doc. 18, att. 3, p. 42. It is mutually applicable and does not require Glad Tidings to arbitrate any claims that an insurer is allowed to litigate. It provides that arbitration will be within the United States. As for the arbitrators, the Middle District pointed out in analyzing identical terms that the procedures allowed plaintiff to select its own arbitrator and that plaintiff could select a broker or employee in a company representing claimants. *Georgetown HOA*, 2021 WL 359735, at *16. And finally, there is no basis for presuming that Glad Tidings had no bargaining power in securing this multi-million dollar surplus lines policy or that it could not read or understand its terms before agreeing to them. "In Louisiana, a party who signs a written instrument is presumed to know its contents and cannot avoid its obligations by contending that he did not read it, that he did not understand it, or that the other party failed to explain it to him."

6

*Georgetown HOA*, 2021 WL 359735, at *13. Accordingly, the arbitration agreement is enforceable and the Motion to Compel and Stay must be granted.

### III.
#### CONCLUSION

For the reasons stated above, **IT IS ORDERED** that the Motions [doc. 18] be **GRANTED** and that all claims asserted in this matter be referred to arbitration as described in the parties' insurance policy. The litigation is hereby **STAYED** pending completion of that process, and the parties are directed to notify the court within **seven days** of the arbitration's conclusion.

**THUS DONE AND SIGNED** in Chambers on this 28th day of June, 2021.

**JAMES D. CAIN, JR.**
**UNITED STATES DISTRICT JUDGE**